HANNAH SMITH, AS SOLE HEIR AT LAW OF SILAS SMITH, DECEASED, AND JOSEPH SMITH, HER HUSBAND, PLAINTIFFS IN ERROR, V. RICHARD LOVE, DEFENDANT IN ERROR.

EJECTMENT—PLEA ON EQUITABLE GROUNDS—FEDERAL HOMESTEAD LAWS—FRAUDULENT PROCUREMENT OF PATENT TO ANOTHER'S LAND.

1. The plea upon equitable grounds, provided for by section 1047 of the Revised Statutes of Florida of 1892, is applicable in actions of ejectment in this State. Such a plea interposed and maintained by proof in an ejectment suit alleging such matter as would entitle the pleader thereof to an injunction in equity, if set forth by bill, restraining the judgment in ejectment against him, has the effect, not of procuring for the pleader in the ejectment suit at law the same full relief as could be meted out in a court of equity, but, of defeating the plaintiff's claim to possession sought by such suit in ejectment; and when such plea is sustained by the proofs entitles the defendant to a verdict. (COCKRELL, J., dissents.)

2. Where a party obtains a patent for lands from the United States by fraudulent imposition on the officers of the land department, equity will give relief to the party legally entitled to receive the patent.

3.  While a court of equity has no power to hear and determine any question affecting the title to public lands of the United States until the land department has determined the matter, and the title has passed from the government, yet after the title has passed to private parties, a court of equity will convert the holder of the legal title into a trustee to the true owner, if in equity and good conscience, and by the laws of Congress and rules of the department thereunder it ought to have gone to another.

4.  Facts alleged in plea upon equitable grounds, held sufficient, if maintained by proofs, to constitute the plaintiff in this case a trustee holding the legal title to the land in controversy in trust for the defendant.

This case was decided by the Court En Banc.

Writ of Error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the Court.

*C. L. Wilson* and *W. E. B. Smith*, for Plaintiffs in Error.

No appearance for Defendant in Error.

Taylor, J.   The defendant in error, Richard Love, during the life-time of Silas Smith, instituted against Smith an action of ejectment in the Circuit Court for Jackson county for the recovery of the possession of the N. W. ¼ of the N. E. ¼ of section 33 in township 5 north, of range 10 west of Tallahassee meridian, containing forty acres. To the declaration, besides the plea of not guilty, the defendant Si-

las Smith during his lifetime interposed the following plea upon equitable grounds: "And for a second plea, and plea upon equitable grounds, that the plaintiff claims title and right of possession to the land described in the declaration by virtue of a patent from the United States President, issued to him on the first day of February, A. D. 1893, under the act of congress, approved May 20th, 1862, 'To secure homesteads to actual settlers on the public domain,' and the acts supplemental thereto, conveying the N. ½ of the N. W. ¼ of section 33, township 5 north, of range 10 west, in Jackson county, Florida. That the entry of said lands under the acts of congress aforesaid, said entry being No. 22,129, was made on December 10th, 1891, through the district land office at Gainesville, the application therefor having been made before the clerk of the Circuit Court of said county of Jackson on March 17th, 1892, final proof was made, and on June 13th, 1892, final receipt No. 10,090 was issued to said plaintiff, after which patent issued as aforesaid; that on and before September 28th, 1883, the entire N. W. ¼ of said section was claimed by the Pensacola and Atlantic Railroad Company, a corporation chartered by the laws of Florida, and' shortly prior to said date the plaintiff and defendant and one Burton Hunter, and one Isaac Smith entered into a mutual agreement to purchase said lands from said company and divide same up as follows: N. E. ¼ of N. W. ¼ to plaintiff, the land in dispute, S. E. ¼ of N. W. ¼ to said Burton Hunter and S. W. ¼ of N. W. ¼ to said Isaac Smith; that in pursuance of said agreement said parties procured one Frank Phillips to purchase said N. W. ¼ and take title in his own name, which he did by deed from said company to him dated September 28th, 1883; that in further pursuance of said understanding and agreement

the said Phillips made deed according to the request of
the respective parties at different times as they would
pay the respective shares of the purchase money, as fol-
lows:   On January 15th, 1884, he deeded to Mary Smith,
wife of Isaac Smith, and Hannah Smith, wife of Silas
Smith, defendant, the W. ½ of the N. W. ¼, which said
parties agreed to divide as follows:  N. W. ¼ of N. W.
¼ to Hannah Smith, and the other forty to Mary Smith;
and on the same day he deeded to Lucy Hunter, wife of
said Burton Hunter, the S. E. ¼ of N. W. ¼, and on June
29th, 1885, he deeded to Carrie Love, wife of plaintiff, the
N. E. ¼ of N. W. ¼, and the respective parties from the
time they entered into possession of said land claimed the
same under their purchases aforesaid until about the date
of the said homestead entry, as more fully explained here-
inafter; that subsequent to the date of said deed to defen-
dant's wife the defendant moved upon his said land,
built a dwelling-house and other improvements thereon
of a value of at least $400, cleared up and fenced a portion
of said land at an expense of at least $25, and made said
land a permanent home for himself and family, and has
continuously resided there, and maintained the posses-
sion thereof exclusive of the plaintiff ever since; that said
plaintiff maintained the possession of the land so deeded
to his wife, claiming same, and not claiming any right or
interest in the land now in dispute, which the plaintiff
and defendant each believed *bona fide* belonged to defend-
ant's wife, until the month of November, or December,
1891, when the plaintiff discovered that the land in dis-
pute, as well as his own forty, was public land and subject
to homestead entry, but which fact was unknown to the de-
fendant; and thereupon, without any notice to the de-
fendant, and although the plaintiff was not residing upon

and had never resided upon or improved the land now in dispute, and knew that the same was in the exclusive possession of the defendant who had improved and claimed the same as his own, made application to enter the same together with his own forty, under the homestead laws as aforesaid, and same was accepted December 10th, 1891, and first receipt issued therefor; that subsequent to such entry and before final proof was made the defendant ascertained that plaintiff had entered said land, and the defendant thereupon informed plaintiff that he proposed to enter a contest for said forty acres upon which he resided, and the plaintiff thereupon assured defendant that he did not want defendant's land and home, and did not enter it for the purpose of depriving defendant of the same; that defendant might rest easy and satisfied because he should never be deprived of the land; that he remembered that all four of the parties before named had gone together to purchase the 160 acres of land together, and that he did not intend to take advantage of defendant by depriving him of his forty after they had all supposed that defendant had a good title thereto; that if a contest was entered for that forty it might affect the plaintiff's right to consummate his entry to the other forty; that he would perfect his right to the whole eighty acres and then convey to defendant his forty, the defendant to pay half of the expenses of obtaining a patent to the land; that said plaintiff further represented to the defendant that he should never be put to any trouble about his forty under the said entry; that he knew he had no moral or legal right to the land in dispute as against defendant, and that defendant should never be dispossessed of his forty, and that plaintiff would do right and tote fair with defendant; that the patent which he might obtain should never

be used to dispossess the defendant; that at the time he entered the land he did not know it was the defendant's land, but supposed it was the land of Burton Hunter, aforesaid; that had he known that the land was that of defendant he would not have entered it; that it would be necessary for plaintiff and defendant to make quit-claim deeds back to the railroad company for the lands and receive their money back; that he and defendant would do that and the defendant could use the money obtained in that manner in paying his share of the expenses of perfecting said entry; that defendant, relying upon these false and fraudulent representations, executed back to the said railroad company a quit-claim upon the land in dispute, and the plaintiff also executed to said company a quit-claim for his forty, and the defendant in consequence of said representations on the part of plaintiff as aforesaid refrained from entering any contest for said forty of land, and the plaintiff never thereafter claimed any right or interest in said land until after procuring his patent for same, when he repudiated his said representations and demanded possession of said land, refusing to accept the sum of fifty dollars tendered him by the defendant long before the beginning of this suit, which sum was more than sufficient to pay one-half of the expenses of perfecting his said entry, which sum defendant is still willing and hereby offers and tenders into court to be paid to plaintiff for the purposes aforesaid. Defendant further alleges that at no time, either before or since the making of said homestead entry, has plaintiff resided upon or been in possession of any portion of the forty acres of land sued for, but said land was at the date of said entry, and has been continuously ever since, in the exclusive adverse possession of the defendant, and has been the home of the said defendant and his family all said while; further, said

plaintiff never did reside upon any portion of the land embraced in said patent for five years with the intention of claiming same under the homestead laws of the United States; neither did he ever settle upon said land with the intention of claiming the same under the said homestead laws; that said plaintiff never resided upon the lands embraced in said patent with his family; that his wife and children lived three miles away upon a lot in the town of Marianna, which was and had been for many years the dwelling lot and place of permanent abode of said plaintiff and his family, and said family have never resided upon any portion of the land embraced in said patent; that said plaintiff has never intended any portion of said land to be a home for himself and family, but always intended the Marianna lot as such; that defendant would have entered a contest against the plaintiff for the forty acres sued for, and would thereupon have shown the facts herein set forth, which were sufficient to have procured a cancellation of said entry of said forty, and upon such cancellation the defendant would have had exclusive and prior rights for thirty days to enter said land, and would have entered it, but for the representations made to him by the defendant as aforesaid, which representations the plaintiff continued to make to the defendant until after the patent actually issued upon said entry." This plea had the following receipt attached thereto:

"Marianna, Fla., Oct. 30, '93.

$50.00.    Received from Francis B. Carter, attorney for Silas Smith, fifty dollars cash, tendered in court with plea of defendant in the case of Richard Love v. Silas Smith— ejectment.    Duplicate receipts issued.

MOSES GUYTON,
Clerk Circuit Court of Jackson County, Florida.
By J. W. POOSER, D. C.

The plea was filed same date, October 30th, 1893. To this equitable plea the plaintiff demurred upon the grounds that the same is vague, indefinite and uncertain, and states no matter of defense to the plaintiff's action; that no question of compensation for improvements upon land sued for can arise until after verdict and judgment for the plaintiff, and then only in the method provided by statute; that the agreement by which defendant waived his right to contest the homestead entry of the plaintiff was illegal, immoral, null and void, and contrary to the laws of the United States; that the question as to the residence, cultivation and improvment of said lands were conclusively settled by the land department of the United States; that any agreement of the plaintiff that he would never deprive defendant of his land, &c., is null and void, without any consideration, and is a *nudum pactum*.

Afterwards, on the third day of January, 1895, the plaintiff suggested the death of the defendant Silas Smith, and afterwards, on June 6th, 1903, the cause was revived against Hannah Smith as the sole heir at law of Silas Smith, deceased, and against Joseph Smith her present husband. Upon the revival of the suit against Hannah Smith she interposed the same pleas in substance that had heretofore been filed by Silas Smith during his lifetime, *viz*: the plea of not guilty, and the plea upon equitable grounds; in the latter adopting and continuing the tender of $50 made through the registry of the court by the said Silas Smith in his former plea upon equitable grounds, and alleging therein that she as the widow and sole heir at law of the said Silas Smith had continuously resided upon the land in dispute, making the same her permanent home, ever since the death of the said Silas up to and including the present time. To the plea upon equitable grounds filed by Hannah Smith the plaintiff de-

murred upon substantially the same grounds as in his former demurrer filed to the same plea of Silas Smith. The court sustained the demurrers to both of these pleas upon equitable grounds. At the trial, upon the plea of general issue, the defendant offered to prove by two witnesses all of the facts set up in the two pleas upon equitable grounds, but this evidence, on objections by the plaintiff, was rejected by the court. No other evidence being allowed except the patent from the United States to the plaintiff embracing the land in dispute, the court gave an affirmative charge to the jury, instructing them to find in favor of the plaintiff, which was accordingly done, and upon this verdict final judgment was entered in favor of the plaintiff and against the defendants for the recovery of the land in dispute and for mesne profits. This judgment the defendants bring here for review by writ of error, assigning as errors all of the above rulings of the court below, viz: The orders sustaining the demurrers to the pleas upon equitable grounds, the ruling rejecting the evidence sustaining the facts alleged in said equitable pleas, and the giving of the affirmative charge to the jury to find for the plaintiff. The court below erred in each and every of these rulings.

That a plea upon equitable grounds under our statute (Sec. 1047 of Revised Statutes of 1892), setting up matter that would entitle the pleader to an injunction in equity restraining the judgment if set forth by bill, is applicable in an action of ejectment, is settled in this jurisdiction. Walls v. Endel, 20 Fla. 86; Johnson v. Drew, 34 Fla. 130, 15 South. Rep. 780. While in such a case a court of law can not adjudge to the defendant setting up such equitable plea the same full relief as could be administered in equity upon the same facts, yet the practical effect of such a plea maintained in an ejectment suit is to de-

feat the plaintiff's claim to possession sought by such suit, and entitles the defendant to a verdict if sustained. Goldsberg v. Kidd, 5 South. Dak. 169, 58 N. W. Rep. 574; Spaur v. McBee, 19 Oregon 76, 23 Pac. 818.

It has been suggested that the land office department of the United States having awarded the land in dispute to the defendant in error and issued to him a patent therefor, that it is a matter *res adjudicata,* and that the courts can not go behind such action of the United States land department, or annul its patent, or disturb the disposition made of the land by the government. This contention is untenable. It has been, long since settled by the Supreme Court of the United States, by repeated decisions, that where a person obtains a patent for lands by fraudulent imposition on the officers of the land department, equity will give relief to the party legally entitled to receive the patent. Comegys v. Vasse, 1 Pet. 193; Lytle v. State of Arkansas, 9 How. (U. S.) 314; Barnard's Heirs v. Ashley's Heirs, 18 How. (U. S.) 43; Garland v. Wynn, 20 How. (U. S.) 6; Minnesota v. Bachelder, 1 Wall, 109; Silver v. Ladd, 7 Wall. 219; Johnson v. Towsley, 13 Wall. 72; Gibson v. Chouteau, 13 Wall. 92; Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. Rep. 122; Sanford v. Sanford, 19 Oregon 3, S. C. 139, U. S. 642, 11 Sup. Ct. Rep. 666. In the case of Twine v. Carey, 2 Okla, 249, 37 Pac. Rep. 1096, it is said that "a court of equity has no power to hear and determine any question affecting the title to public lands until the land department has determined the matter, and the title has passed from the government. But after the title has passed to private parties, a court of equity will convert the holder of the legal title into a trustee to the true owner, if in equity and good conscience, and by the laws of congress and rules of the department thereunder, it ought to have gone to another."

In the case of McCrillis v. Copp, 31 Fla. 100, 12 South. Rep. 643, the facts materially differed from the case at bar. The bill in that case sought specific performance of a bond for title executed by a homestead entryman prior to final receipt from the United States Land department, conditioned to convey to the obligee in the bond the land embraced in the homestead entry so soon as the entryman should obtain a final receipt therefor from the United States, and it was there very properly held that a contract by a homesteader to convey a portion of the tract when he shall acquire title from the United States is against public policy and void, and that such contract can not be enforced, though a valuable consideration may have passed to the homesteader therefor. In that case, it must be observed, the only right or claim that the complainant had to or in the homestead land was derived from and through the illegal and void bond for title. The facts presented in the equitable plea of the defendant in the case at bar make a widely different case. Here the defendant did, under the homestead laws of the United States, have other and superior rights in and to the land in controversy *independently* of any agreement, contract or assurance from the plaintiff in ejectment. The facts alleged in his plea show that he in good faith made actual settlement upon the land with his family, erecting thereon a dwelling-house and other valuable improvements, and actually residing there with his family, making it his *bona fide* home and permanent place of abode at the time of and long prior to the entry of the land made by the plaintiff, at the United States land office, which settlement, occupancy and improvement clothed him, under the Federal homestead laws, with the *superior* and *preferred* right over all others of acquiring title thereto by homestead entry thereof. Under the facts disclosed by the

plea, the plaintiff's entry of the land was in fraud of defendant's rights, and when he discovered the fraud and expressed his intention to expose it through a contest of the entry, the plaintiff lulled him into abstinence from asserting his rights by assuring him that if he desisted from such contest he would never disturb him in the possession and enjoyment of his home, thereby perpetrating a double fraud, the one upon the United States in acquiring title to land upon which he had never resided, made settlement or improvement, the other upon the defendant in fraudulently making entry upon land to which the latter had superior right, and lulling him into repose by falsely assuring him that he should never be disturbed in the possession that was his by virtue of prior *bona fide* and lawful settlement and improvement. Neither does the plea seek specific performance, but simply seeks to restrain the recovery of possession upon the equitable ground that the plaintiff though clothed with the legal title holds it in trust for the defendant. We are of the opinion that if the facts alleged in the equitable plea in this case are sustained by the proofs, the plaintiff should be deemed to hold the legal title in trust for the heirs of the original defendant Silas Smith, and that he should fail in his recovery of possession of the land in the ejectment suit by him instituted, and that upon an appropriate proceeding to that end in equity, he should be compelled to transfer the legal title to the heirs of Silas Smith. Bohall v. Dilla, 114 U. S. 47, 5 Sup. Ct. Rep. 782; Bird v. Ward, 1 Mo. 398, S. C. 13 Am. Dec. 506; Goldberg v. Kidd, 5 South. Dak. 169, 58 N. W. Rep. 574; Rogers v. Brent, 5 Gillman 573, S. C. 50 Am. Dec. 422; Atherton v. Fowler, 96 U. S. 513; Goodwin v. McCabe, 75 Cal. 584, 17 Pac. Rep. 705; Jamison v. Beaubien, 3 Scammon 113, S. C. 36 Am.

16 S C

Dec. 534; McKinnis v. Scotch American Mortgage Co., 55 Kan.. 259, 39 Pac. Rep. 1018; Chesser v. DePrater, 20 Fla. 691; Snow v. Flannery, 10 Iowa 318, S. C. 77 Am. Dec. 120; Hosmer v. Wallace, 97 U. S. 575; Tremouth v. San Francisco, 100 U. S. 251; Mower v. Fletcher, 116 U. S. 380, 6 Sup. Ct. Rep. 409; Bulock v. Rouse, 81 Cal. 590, 22 Pac. Rep. 919; Sweesey v. Sparling, 9 L. R. A. 777; Sanford v. Sanford, 19 Ore. 3, S. C. 139 U. S. 642, 11 Sup. Ct. Rep. 666; Twine v. Carey, 2 Okla. 249, 37 Pac. Rep. 1096.

The judgment of the court below is reversed at the cost of the defendant in error, with directions to overrule the demurrers of the plaintiff to the pleas upon equitable grounds filed by the defendants Silas Smith and Hannah Smith, and that a new trial be awarded.

WHITFIELD, C. J., and SHACKLEFORD and HOCKER, JJ., concur:

COCKRELL, J., dissents.

(Mr. Justice CARTER, being disqualified, took no part in the decision of this case.)

COCKRELL, J., dissenting. In my opinion no "plea on equitable grounds" to an action in ejectment can be sustained under our constitution, and the trial court should not, therefore, be held in error in sustaining a demurrer to such a plea, even though the specific grounds named in the demurrer may be not well taken.

Without elaborating my views, I hold that the constitution discloses a clear purpose to keep separate the jurisdiction of courts of law from the jurisdiction of equity courts, and that this purpose is violated should we permit these

equity pleas to be interjected into an action at law. In
but one instance has this court upheld one of these pleas,
Walls v. Endell, 20 Fla. 86, and in that case the decision
was placed on the statute without any inquiry or sugges-
tion as to its constitutionality.